IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROMONA L. ANDREWS, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-733-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Romona L. Andrews ("Andrews") filed this action pursuant to Sections 405(g)

and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for disability insurance benefits ("DIB")

under Title II and supplemental security income ("SSI") under Title XVI of the Social Security

Act ("SSA").  Andrews applied for DIB and SSI on September 18, 2008, alleging that her

disability began on April 1, 2004.  (Tr. 40–41.)

After her application for benefits was denied initially and on reconsideration, Andrews

requested a hearing before an administrative law judge ("ALJ").  (Tr. 40–43, 60–61.)  The ALJ

held a hearing on May 19, 2010, and issued an unfavorable decision on June 11, 2010. (Tr. 16–

25, 30–39.)  On August 11, 2011, the Appeals Council denied Andrews' request for review,

leaving the ALJ's decision as the final decision of the Commissioner in her case.  (Tr. 1–5.)

Andrews subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are

governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory

provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (2012)

(disability); 20 C.F.R. Pt. 416 (2012) (SSI).  Although technically governed by different statutes

and regulations, "[t]he law and regulations governing the determination of disability are the same

for both disability insurance benefits and the SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th

Cir. 1994).  The SSA defines a "disability" as a "medically determinable physical or mental

impairment" lasting at least twelve months that prevents the claimant from engaging in "any

substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168

F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a

five-step analysis is employed.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  First, the claimant

must not be presently working at any substantial gainful activity.  *Id.* §§ 404.1520(b),

416.920(b).  "Substantial gainful activity" is defined as work activity "that involves doing

significant physical or mental activities . . . for pay or profit." *Id.* §§ 404.1572, 416.972.

Second, the claimant must have an impairment or combination of impairments that is severe.  *Id.*

§§ 404.1520(c), 461.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited*

*in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the

impairment or combination of impairments meets or equals an impairment contained in the

Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.   20 C.F.R. §§

404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's

2

medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(g), 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(e), 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(e), 416.920(e). At steps one through four, the burden of proof rests upon the claimant to show that she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings

support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

Andrews presents the following issues:

1. Whether the ALJ protected the due process rights of Andrews, an unrepresented claimant;

2. Whether the Commissioner applied proper legal standards and considered all of Andrews' "severe" impairments; and

3. Whether the Commissioner properly evaluated Andrews' credibility.

(Pl.'s Br. 1.)

### IV. ALJ DECISION

In his June 11, 2010 decision, the ALJ concluded that Andrews was not disabled within the meaning of the SSA. (Tr. 25.) In making his determination, the ALJ proceeded to follow the five-step sequential evaluation process. At the first step, the ALJ found that Andrews had engaged in substantial gainful activity by being employed as a caregiver from August 2006 to June 20, 2008. (Tr. 18.) The ALJ also found, however, that there had been continuous twelve-month periods since the alleged disability onset date (April 1, 2004) during which Andrews had not engaged in substantial gainful activity. (Tr. 19.) At the second step, the ALJ found that Andrews "had the following severe impairments: a history of hypertension, asthma, thoracic spondylosis, degenerative disc disease L3-L4, adjustment disorder with depressed mood, a history of cocaine dependence in sustained full remission, and obesity." (Tr. 19.) At the third step, the ALJ found that Andrews' severe impairments did not meet or equal in severity to an impairment contained in the Listing. (Tr. 19.)

4

The ALJ then found that Andrews had the residual functional capacity to perform light work, with the limitation that the work must be performed "in an environment that is free of fumes, odors, dusts, gases, poor ventilation, etc." (Tr. 23.) Next, at the fourth step, the ALJ found that Andrews could perform her past relevant work as a "customer service clerk/sales clerk inside a bookstore." (Tr. 24.) Accordingly, the ALJ found that Andrews had not been under a disability at any time from April 1, 2004, through the date of the decision. (Tr. 25.)

## V.   DISCUSSION

**A.    Did the Commissioner Apply Proper Legal Standards and Consider All of Andrews' Severe Impairments?**

### 1.    Andrews' Mental Impairments

#### a.  Fifth Circuit's Severity Standard

In her second issue,[1] Andrews claims that the ALJ failed to use the required severity standard of *Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985), in analyzing the severity of her impairments at step two. To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at step two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *cf.* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104–05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight

---

[1] For ease of discussion, the Court will discuss Andrews' second issue, which challenges the ALJ's findings regarding the degree of Andrews' impairments, at the outset.

abnormality" having "*such minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added). "An impairment causing *any* interference with work ability, even minimal interference, is a severe impairment under *Stone*." *Morris v. Astrue*, No. 4:11-CV-631-Y, 2012 WL 4466144, at *1 (N.D. Tex. Sept. 27, 2012); *see also Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work.").

Most courts in this district have repeatedly held that severity standards that deviate from the specific *Stone* language do not comply with the requisite standard set forth in *Stone*. *See, e.g., Boone v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-813-BF, 2012 WL 4442281, at *9 (N.D. Tex. Sept. 26, 2012) (Stickney, Mag. J.); *Hunter v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-2649-O, 2012 WL 4741231, at *9–10 (N.D. Tex. Sept. 6, 2012) (Stickney, Mag. J.), *adopted in* 2012 WL 4748212 (N.D. Tex. Oct. 4, 2012) (O'Connor, J.); *Morris v. Astrue*, No. 4:11-CV-631-Y, 2012 WL 4468185, at *3 (N.D. Tex. Sept. 4, 2012), *adopted in* 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012); *Scott v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-0152-BF, 2012 WL 1058120, at *7 (N.D. Tex. Mar. 29, 2012) (Stickney, Mag. J.) ("An ALJ's referral to applicable social security regulations and rulings . . . does not substitute as a proper construction of the *Stone* standard."); *Brown v. Astrue*, No. 3:11-CV-0475-BD, 2012 WL 652034, at *3 (N.D. Tex. Feb. 29, 2012) (Kaplan, Mag. J.) (observing that the ALJ "stated that an impairment was not severe 'when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work[,]' . . . thus suggesting that some interference with the ability to work was permissible."); *Ramos v. Astrue*, No. 3:10-CV-1495-BD, 2011 WL 2469582, at *3–4 (N.D. Tex. June 21, 2011) (Kaplan, Mag. J.); *Craaybeek v. Astrue*, No. 7:10-CV-054-BK, 2011 WL 539132, at *6 (N.D.

Tex. Feb. 7, 2011) (Toliver, Mag. J.); *Charlton v. Astrue*, No. 3:10-CV-056-O, 2010 WL 3385002, at *7 (N.D. Tex. July 14, 2010) (Ramirez, Mag. J.), *adopted in* 2010 WL 3385000 (N.D. Tex. Aug. 26, 2010) (O'Connor, J.); *Roberson v. Astrue*, 3:10-CV-0240-BH, 2010 WL 3260177, at *10 (N.D. Tex. Aug. 17, 2010) (Ramirez, Mag. J.); *Tusken v. Astrue*, No. 4:08-CV-657-A, 2010 WL 2891076, at *8 (N.D. Tex. May 25, 2010) (Cureton, Mag. J.), *adopted in* 2010 WL 2891075 (N.D. Tex. July 20, 2010) (McBryde, J.); *Garcia v. Astrue*, No. 3:08-CV-1881-BD, 2010 WL 304241, at *3–4 (N.D. Tex. Jan. 26, 2010) (Kaplan, Mag. J.); *Ruby v. Astrue*, No. 3:08-CV-1012-B, 2009 WL 4858060, at *7–8 (N.D. Tex. Dec. 14, 2009) (Boyle, J.); *Scroggins v. Astrue*, 598 F. Supp. 2d at 805–07 (Lindsay, J.); *Sanders v. Astrue*, No. 3:07-CV-1827-G, 2008 WL 4211146, at *7 (N.D. Tex. Sept. 12, 2008) (Fish, J.). *But see Abrego v. Astrue*, No. 5:11-CV-218-BG, 2012 WL 5005778, at *2 (N.D. Tex. Sept. 28, 2012) (Koenig, Mag. J.) (holding that a definition of a nonsevere impairment as one "that would have no more than a minimal effect on an individual's ability to work" complies with *Stone* and finding impairments having "more than a slight effect" on the claimant's ability to work to be severe), *adopted in* 2012 WL 5076027 (N.D. Tex. Oct. 18, 2012) (Cummings, J.); *Sinayi v. Astrue*, No. 3:11-CV-2770-D, 2012 WL 3234414, at *3 (N.D. Tex. Aug. 9, 2012) (Fitzwater, C.J.) (holding that a severity standard defining a nonsevere impairment as one "that would have no more than a minimal effect on an individual's ability to work" complies with *Stone*); *Lopez v. Astrue*, No. 4:10-CV-921-A, 2012 WL 1207393, at *7 (N.D. Tex. Mar. 8, 2012) (McBryde, J.) (same).

While a case will not be remanded simply because the ALJ did not use "magic words," remand is required when there is no indication that the ALJ applied the correct standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *see also McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 835 (N.D. Tex. 2008) (indicating that the Fifth Circuit's remand mandate in *Stone* left lower courts with no discretion to conduct "harmless error"

analysis to determine if remand was proper when the ALJ failed to apply the *Stone* severity standard). The ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error, and the claim must be remanded for reconsideration unless the correct standard is used. *Stone*, 752 F.2d at 1106. In other words, if the ALJ fails to apply the *Stone* standard by (1) stating the appropriate standard, (2) citing to *Stone*, or (3) making clear in the decision that the ALJ applied the correct *Stone* standard, remand is required, and the Court cannot engage in a "harmless error" analysis.

### b. ALJ's Application of the Severity Standard in the Present Case

Citing the regulations and Social Security Rulings, the ALJ first stated in his opinion that an impairment is severe "if it significantly limits an individual's ability to perform basic work activities." (Tr. 17.) The ALJ then stated that an impairment is not severe "when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (Tr. 17.) The ALJ then proceeded to follow the five-step procedure and analyzed the severity of Andrews' history of hypertension, asthma, thoracic spondylosis, degenerative disc disease L3-L4, adjustment disorder with depressed mood, history of cocaine dependence in sustained full remission, and obesity. (Tr. 19.) The ALJ first found all these impairments to be severe because they "would have more than a slight effect on her ability to work." (Tr. 19.)

At step three, however, the ALJ fully evaluated Andrews' mental impairments (adjustment disorder with depressed mood and cocaine dependence in sustained full remission) pursuant to the "technique"[2] and, citing to *Stone*, concluded that they were not severe impairments. (Tr. 22–23.) In making this conclusion, the ALJ stated as follows:

---

[2] An ALJ must follow mandatory steps known as the "technique" when evaluating the severity of mental impairments in claimants. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The regulations require the ALJ to evaluate the degree of functional loss resulting from the claimant's mental impairments. 20 C.F.R. §§ 404.1520a(b)(2),

8

> [T]he record establishes her depressive syndrome characterized by sleep disturbance, psychomotor agitation or retardation, decreased energy, and feelings of guilt or worthlessness present no restriction of activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and she has no episodes of decompensation each of extended duration.

(Tr. 23.) Andrews contends that, although the ALJ cited *Stone*, he also stated and applied an incorrect standard for evaluating the severity of her mental impairments. Accordingly, Andrews argues that the ALJ erred by making this specific finding that her mental impairments were not severe. (Pl's Br. 12–13.)

In this case, the ALJ cited *Stone* in his step-three analysis of the severity of Andrews' mental impairments. (Tr. 23.) However, earlier in his decision, the ALJ recited a regulatory definition of severity that the Fifth Circuit in *Stone* had specifically rejected. Furthermore, the ALJ stated at step two that Andrews' severe impairments "would have *more than a slight effect* on her ability to work" and at step three that Andrews' mental impairments did not have "*more than [a] minimal effect* on her ability to perform basic work-related mental activities." (Tr. 19, 23) (emphasis added). In this way, the ALJ was less than clear in his language regarding the severity standard he employed in this case.

As stated above, under the *Stone* standard, an impairment that causes *any* interference with work ability, even minimal interference, is severe. In this case, however, the ALJ's cited severity-standard language could require at least a "minimal effect" on work ability before a severe impairment can be found. Therefore, even though the ALJ cited *Stone*, his simultaneous citation to and application of other incorrect severity-standard language creates ambiguity. *See*

---

416.920a(b)(2). If an impairment is found, the ALJ must evaluate the claimant's limitations in four functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The degree of the fourth functional area is rated on a four-point scale, which includes none, one or two, three, and four or more. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

*Neal v. Comm'r of Soc. Sec. Admin.*, No. 3:09-CV-522-N, 2009 WL 3856662, at *1 (N.D. Tex. Nov. 16, 2009) (Godbey, J.) ("Even though citation to *Stone* may be an indication that the ALJ applied the correct standard of severity, nowhere does *Stone* state that the ALJ's citation to *Stone*, without more, conclusively demonstrates that he applied the correct standard.").

It is well-established law that a case will not be remanded simply because the ALJ did not use "magic words," and the undersigned has recommended to affirm when an ALJ has cited conflicting severity standards but the decision as a whole makes clear that the ALJ did, in fact, use the appropriate severity standard. *See Andrade v. Astrue*, No. 4:11-CV-318-Y, 2012 WL 1106864, at *8 (N.D. Tex. Feb. 13, 2012) (reviewing the ALJ's employment of the mental impairment "technique"), *adopted in* 2012 WL 1109476 (N.D. Tex. Apr. 2, 2012); *Martinez v. Astrue*, No. 4:10-CV-883-Y, 2011 WL 3930219, at *7 (N.D. Tex. Aug. 18, 2011) (same), *adopted in* 2011 WL 3930216 (N.D. Tex. Sept. 7, 2011). In addition, one recent decision in this district held that even when the ALJ cited only the severity standard in the regulations without mentioning *Stone* or otherwise acknowledging the proper construction of the regulations, the ALJ's decision nevertheless properly analyzed the claimant's impairment because the results of the claimant's psychological evaluation were "entirely consistent" with a *Stone* finding of nonseverity and because there was "absolutely no evidence" that emotional distress rendered the claimant unable to work. *Taylor v. Astrue*, No. 3-10-CV-1158-O-BD, 2011 WL 4091506, at *7 (N.D. Tex. June 27, 2011) (Kaplan, Mag. J.), *adopted in* 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011) (O'Connor, J.), *aff'd*, No. 11-11085, 2012 WL 2526921 (5th Cir. June 28, 2012).

Accordingly, with regard to Andrews' mental impairments, the Court must examine the ALJ's decision as a whole to determine whether the ALJ actually applied the *Stone* standard that he cited at the end of his step-three analysis. Although the regulations' technique for evaluating mental impairments does not contain the severity standard set forth in *Stone*, it does, as discussed

above, set forth specific steps that the ALJ is to follow in assessing mental impairments. After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must normally find that the impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). The regulations contain a presumption that if the claimant's degree of limitation is rated as none or mild in the first three functional areas and as none in the fourth area, the ALJ will generally conclude that the claimant's mental impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). This presumption may be rebutted if "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1); *see also Stone*, 752 F.2d at 1101; *White v. Astrue*, No. 4:08-CV-415-Y, 2009 WL 763064, at *11 (N.D. Tex. Mar. 23, 2009) (concluding that the ALJ's finding of nonseverity was not contrary to *Stone* "because the ALJ, in applying the special technique [set forth in the regulations for evaluating mental impairments], found mild deficits in her concentration, persistence or pace, as well as social functioning").

The ALJ followed the technique in this case in determining that Andrews' mental impairments were not severe, specifically finding that Andrews had either no or only mild restrictions in the first three functional areas, and none in the fourth. (Tr. 23.) Consequently, the Court concludes, based on the specific facts of this case, that the ALJ's analysis of Andrews' mental impairments under the technique is sufficient to avoid reversal pursuant to *Stone* and its progeny.[3] *See Andrade*, 2012 WL 1106864, at *8 (concluding that, although the ALJ cited

---

[3] The Court recognizes that the ALJ first stated at step two that he found Andrews' mental impairments to be severe, then stated the opposite at step three when he found that Andrews' mental impairments were not severe. The Court disagrees, however, that this makes the ALJ's decision ambiguous. (Pl.'s Reply 3.) At step two, the ALJ merely included Andrews' mental impairments in a list of "severe" impairments with no further details or specific discussion regarding her mental impairments. But at step three, the ALJ thoroughly reviewed the evidence, applied

conflicting severity standards, his determination pursuant to the technique that the claimant had

no severe mental impairments was an implicit finding that the claimant's mental impairments

would not be expected to interfere with the claimant's ability to work and, thus, complied with

*Stone*); *Martinez*, 2011 WL 3930219, at *7 ("[T]he Court concludes . . . that the ALJ's analysis

of [the claimant's] depression under the technique, resulting in a finding that [the claimant] had

only a mild impairment in the four functional areas, is sufficient to avoid reversal pursuant to

*Stone* and its progeny.").[4] Thus, as noted above, remand is not required on this issue because the

record supports the conclusion that the ALJ applied the correct severity standard in evaluating

Andrews' mental impairments.[5]

### c.  Evidence Supporting ALJ's Finding of Nonseverity

Having concluded that the ALJ applied the correct standard to evaluate Andrews' mental

impairment, the Court now turns to the question of whether substantial evidence exists to support

---

the technique, and specifically cited *Stone* to conclude that Andrews' mental impairments were not severe. Accordingly, this detailed analysis finding Andrews' mental impairments to be nonsevere does not make the ALJ's severity determination ambiguous, -- it merely shows that the ALJ's inclusion of Andrews' mental impairments in his earlier list of severe impairments at step two was an oversight or mistake. The ALJ's decision as a whole makes clear that the ALJ did not consider Andrews' mental impairments to be severe.

[4] *See also Holman v. Astrue*, No. 2:06-CV-0238, 2009 WL 3047418, at *4 (N.D. Tex. Sept. 23, 2009) (finding that, although the ALJ failed to cite to *Stone* and referenced only Social Security Rulings that contained the *Stone* language, the ALJ's additional analysis of plaintiff's mental impairment under the technique showed that "the ALJ found plaintiff's mental impairments were less than a slight abnormality having such minimal effect on the plaintiff that they would not be expected to interfere with her ability to work"); *Parra v. Astrue*, No. 4:07-CV-443-Y, 2009 WL 49999, at *5 (N.D. Tex. Dec. 3, 2008) (concluding that the ALJ's finding of nonseverity after analyzing the claimant's mental impairments pursuant to the technique was "an implicit finding that her mental impairments have such minimal effect that they would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience"); *cf. Vinning v. Astrue*, No. 4:08-CV-059-A, 2009 WL 920192, at *4 (N.D. Tex. Apr. 2, 2009) (stating that "a finding of *more* than mild impairment in [the claimant's] mental functioning would suggest that a severe mental impairment existed") (emphasis added).

[5] The Court is aware that the technique used in evaluating mental impairments and cited to by the ALJ contains language that is inconsistent with the severity standard set forth in *Stone*. *See* 20 C.F.R. §§ 404.1520a, 416.920a ("If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . ."). The Court is not suggesting that an ALJ's reference to the technique set forth in sections 404.1520a and 416.920a will, in every case, lead to the same result that remand is not required.

the ALJ's conclusion that Andrews' mental impairment was not severe. On April 25, 2009, Andrews underwent a psychological and mental status exam with a consulting physician, Dr. Jason Simpson, Psy.D ("Dr. Simpson"). (Tr. 333–38.) Andrews reported an onset of depression in 2004 or 2005 related to physical problems that had also begun at that time. (Tr. 333.) She reported that her appetite had increased and that she had gained sixty-five pounds over the past year. (Tr. 333.) She complained of a decreased ability to sleep due to physical pain, averaging four to five hours of sleep per night. (Tr. 333.) She stated that she had "[s]ome loss of interest in previously rewarding behaviors and relationships, but also due to physical demands." (Tr. 333.)

Dr. Simpson observed that Andrews had a depressed mood and flat affect but that she also had unremarkable motor activity, clear speech, and the ability to respond to prompts as given. (Tr. 334.) Her abstract thought was average, and her concrete thought was fair. (Tr. 335.) She had average judgment and contact with reality, but her memory "appear[ed] generally to be mildly impaired." (Tr. 335–36.) Based on this exam, Dr. Simpson diagnosed Andrews with chronic adjustment disorder with depressed mood and cocaine dependence in sustained full remission, and he assessed a GAF score of 41.[6] (Tr. 337.)

On April 29, 2009, Robert B. White, Ph.D. ("Dr. White"), a State agency psychological consultant, completed a Mental Residual Functional Capacity Assessment concluding that Andrews was moderately limited in her ability (1) to understand, remember, and carry out detailed instructions; (2) to maintain attention and concentration for extended periods; (3) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

---

[6] The Global Assessment of Functioning (GAF) scale rates psychological, social, and occupational functioning on a scale of 0 to 100. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text rev. 2000) [hereinafter "*DSM-IV-TR*"]. A GAF code of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

periods; and (4) to respond appropriately to changes in the work setting. (Tr. 354–55.) Dr. White elaborated that Andrews "is able to understand, remember and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact [with] others and respond to changes." (Tr. 355.)

Dr. White also filled out a Psychiatric Review Technique form noting Andrews' diagnosis of adjustment disorder with depressed mood as well as cocaine dependence in sustained full remission. (Tr. 342, 347.) In the first three of the four functional areas, Dr. White found Andrews to be mildly limited in her activities of daily living; mildly limited in social functioning; and moderately limited in concentration, persistence, or pace. (Tr. 349.) In the fourth functional area, Dr. White found no episodes of decompensation. (Tr. 349.) Dr. White noted that Andrews had no history of inpatient admissions or emergency room visits for mental problems. (Tr. 351.) Dr. White reviewed Dr. Simpson's exam findings and stated that the GAF score of 41 "appear[ed] low" in light of the exam findings, Andrews' activities of daily living, and lack of longitudinal medical evidence. (Tr. 351.)

In his decision, the ALJ reviewed Dr. Simpson's exam findings and stated as follows: "Although the consultative examiner presented a subjective GAF score of 41 indicating serious symptoms, he also reported [that] no tests were administered[,] and a GAF score is a completely *subjective* measure of a claimant's ability to function in the psychological, social, and occupational areas of life." (Tr. 23) (emphasis in original). The ALJ's decision did not discuss Dr. White's evaluations at all. Andrews argues that the ALJ improperly evaluated the evidence because he did not give appropriate explanations for rejecting these medical opinions. (Pl.'s Br. 15; Reply 4.) The Court disagrees.

The regulations require an ALJ to give controlling weight to a treating source's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the ALJ does not give the treating source's opinion controlling weight, he must apply the factors listed in sections 404.1527(c) and 416.927(c) to determine what weight to give to the opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, Andrews points to no evidence in the record of any opinion from a treating physician regarding her mental impairments, or even any evidence that she had ever been treated for her mental impairments during the period of alleged disability.[7] The only opinions contained in the record were that of two nontreating sources: a consultative examiner and a nonexamining State agency consultant. *See* 20 C.F.R. §§ 404.1502, 416.902. Accordingly, the ALJ was not required to give these opinions controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The ALJ was, however, required to articulate the weight given to the opinions of Dr. Simpson and Dr. White. *See* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) (stating that, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . , as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources"). The ALJ therefore erred to the extent that he did not provide such an explanation. *See Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. Mar. 8, 2005). However, "[t]he ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it," *id.*, and the Court's review of the record reveals the existence of substantial evidence supporting the ALJ's decision. Accordingly, any error by the ALJ in not explicitly delineating in his decision the factors listed

---

[7] Andrews testified at the hearing that she had "[gone] through detox or [gone] through rehab" for cocaine addiction over ten years ago. (Tr. 34–35.)

in sections 404.1527(c) and 416.927(c) is harmless.[8]  *See Hammond*, 124 F. App'x at 851–52 (stating that the ALJ, in evaluating medical opinions to determine the severity of the claimant's impairment, "likely made the same fact-based judgments that form the basis of [the court's] refusal to overturn his decision on substantial evidence review").

Andrews complains that the ALJ rejected the GAF score of 41 assigned by Dr. Simpson without sufficient explanation. (Pl.'s Br. 15.)  On the contrary, the ALJ recounted the content of Dr. Simpson's report and then pointed out that the GAF score was a subjective measurement that Dr. Simpson had assessed without administering any psychological tests to Andrews.  (Tr. 337.) An ALJ may give less weight to a medical source opinion that is not well supported by relevant evidence, particularly medical signs and laboratory findings, such as diagnostic testing.  *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  Furthermore, a GAF score is not determinative of a claimant's ability to work.  *See Fuller v. Astrue*, No. 4:09-CV-197-A, 2010 WL 5566819, at *8 (N.D. Tex. Oct. 13, 2010), *adopted in* 2011 WL 94549 (N.D. Tex. Jan. 11, 2011).  Federal courts have specifically declined to find a link between a claimant's GAF score and her ability or inability to work.  *See* 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000) (declining to endorse the GAF scale for use in Social Security and SSI disability programs and stating that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"); *see also, e.g.*, *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005); *Andrade v. Astrue*, No. 4:11-CV-318-Y, 2012 WL 1106864, at *8 (N.D. Tex. Feb. 13, 2012), *adopted in* 2012 WL 1109476 (N.D. Tex. Apr. 2, 2012).

---

[8] The harmless error doctrine applies in Social Security disability cases. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998).  "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (quoted in *Morris*, 864 F.2d at 335).

Andrews also complains that the ALJ did not fully consider the limitations reported by the State agency physician. (Pl.'s Br. 13.) However, ALJs "are not bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Further, any conflicts in the evidence, including medical opinions, are resolved by the ALJ, not the courts. *See Newton v. Apfel*, 209 F.3d 448, 457 (5th Cir. 2000). As the ALJ observed, Dr. Simpson noted that Andrews reported being able to handle her own self-care, shop, run errands, drive or take public transportation by herself, cook, and take care of her own financial issues. (Tr. 23, 333.) Andrews stated that she got along "fair" with family, friends, neighbors, and others and that she was generally able to complete important tasks and follow instructions. (Tr. 23, 333.) Dr. Simpson's mental status exam findings were that Andrews was "average" in every area except concrete thought ("fair") and memory, which "appear[ed] generally to be mildly impaired." However, Dr. Simpson also recorded that Andrews was able to respond to prompts as given and that her conversational flow was adequate.

This single medical record, prepared after a single one-hour visit with Andrews, is the sole medical evidence contained in the transcript prepared by an examining medical source. While the State agency consultant opined that Andrews had some moderate work-related mental limitations, he had no treating or examining relationship with Andrews and had only Dr. Simpson's exam upon which to base his opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that more weight is given to opinions of examining or treating sources and opinions that are more supported by medical evidence and consistent with the record as a whole). With no records from any other treating or examining physician finding any more significant limitations on Andrews' abilities, the Court cannot say that no credible evidentiary choices or medical findings support the ALJ's decision to give Dr. Andrews' opinion less weight. Substantial

evidence thus supports the ALJ's finding that Andrews' mental impairments do not affect her ability to perform work-related activities and, thus, are not severe.

### 2.  Andrews' Physical Impairments

Andrews also argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly evaluated the medical opinion evidence with regard to her physical impairments.  The ALJ found that Andrews retained the RFC to perform light work, provided that she performed her job duties in an environment that is free from fumes, odors, dusts, gases, poor ventilation, and so forth.  (Tr. 23.)  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing."  20 C.F.R. §§ 404.1567(b), 416.967(b).

In his decision, the ALJ recounted the medical evidence of Andrews' physical impairments, beginning with a February 2007 emergency room visit for complaints of swelling in the right leg and popping in the right knee.  (Tr. 20.)  Andrews visited emergency rooms multiple times in 2007 and 2008 for allergic reactions with symptoms of shortness of breath and itching.  (Tr. 20.)  At one of these emergency room visits, in September 2008, Andrews reported chest pain.  It resolved spontaneously, and a stress myocardial perfusion test revealed no significant abnormalities.  (Tr. 20.)  She was diagnosed with atypical chest pain, gastrointestinal reflux disease, severe multiple food allergies, hypertension, morbid obesity, and tobacco addiction.  (Tr. 20.)

In November 2008, Andrews was evaluated by a physician in conjunction with her request for an allergy referral.  (Tr. 20.)  Andrews also requested medication for back pain, claiming that over-the-counter medications were not helping.  (Tr. 20.)  The physical exam revealed high blood pressure and obesity but no significant abnormalities.  (Tr. 20.)  Andrews

returned the following month complaining of chest pain, but objective clinical findings revealed no acute chest abnormalities. (Tr. 20.)

On March 19, 2009, Andrews underwent a consultative internal medicine exam perfomed by Rima Bishara, M.D. ("Dr. Bishara"). (Tr. 21, 313.)  Dr. Bishara diagnosed Andrews with hypertension, asthma, and obesity. (Tr. 315.)  Dr. Bishara noted that Andrews complained of low back pain but that her subjective complaints were much worse than the objective findings, and there was "[e]vidence of quite prominent symptom magnification." (Tr. 315.)  Lower extremity active testing revealed weakness, but this was "inconsistent with other findings[,] including her entry and exit from the office with little difficulty." (Tr. 315.)  Based on the objective findings, Dr. Bishara opined that Andrews could sit 2/3 of an eight-hour day; stand 1/3 of an eight-hour day; move 1/3 of an eight-hour day; bend, stoop, and squat 1/3 of an eight-hour day; lift and carry twenty pounds occasionally and ten pounds frequently; and climb occasionally. (Tr. 315–16.)  Dr. Bishara also opined that Andrews should avoid all exposure to "extremes of heat/cold/dust/fumes/etc." and unprotected heights.

State agency consultant Kavitha Reddy, M.D. ("Dr. Reddy") performed a nonexamining physical RFC assessment on April 30, 2009, and, consistent with Dr. Bishara's opinion, opined that Andrews could lift and carry twenty pounds occasionally and ten pounds frequently. (Tr. 357–58.)  Dr. Reddy opined that Andrews could stand and walk about 2/3 of an eight-hour day and sit about 2/3 of an eight-hour day. (Tr. 358.)  Dr. Reddy assessed postural limitations, opining that Andrews could frequently balance and frequently climb ramps and stairs but that she could only occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. (Tr. 359.)  Dr. Reddy also opined that Andrews should avoid concentrated exposure to hazards and to fumes, odors, dusts, gases, poor ventilation, and so forth. (Tr. 361.)

In October 2009, Andrews was evaluated by a neurosurgeon, whose impression was that Andrews' back pain was due to degenerative disc disease in the lower lumbar spine. (Tr. 22, 399.) Andrews' motor examination showed upper-extremity strength of 5/5 throughout and lower-extremity strength of 4+ out of 5; the neurosurgeon noted, however, that "[t]his exam is somewhat limited by pain and patient effort." (Tr. 22, 398.) Deep tendon reflexes were 2+ and symmetric. The sensory exam showed Andrews to be grossly intact to light touch, although Andrews noted altered sensations in her legs. (Tr. 22, 398.) Although Andrews' gait was "slow and antalgic," it was "non-ataxic."[9] (Tr. 22, 398.) The straight leg test elicited back pain bilaterally and knee pain on the right. (Tr. 22, 398.) The neurosurgeon recommended a lumbar epidural steroid injection as part of Andrews' ongoing conservative management of pain. (Tr. 22, 399.) Andrews reported in January 2010 that the injection worked well for about two weeks, but then her back pain returned. She underwent a repeat injection in February 2010. (Tr. 22.)

Andrews, citing Social Security Ruling ("SSR") 83-10, first argues that Dr. Bishara's opinion includes "significant limitations [that] would not comport with the Commissioner's definition of light work." (Pl.'s Br. 14.) SSR 83-10 states that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (1983). Andrews does not identify the "significant limitations" that do not comport with the definition of light work, but presumably they include Dr. Bishara's opinion that Andrews can walk only for one-third of a day and stand for only one-third of a day (i.e., less than the six hours per day required by SSR 83-10). Andrews complains that the ALJ failed to indicate what weight, if any, the ALJ gave to Dr.

---

[9] An antalgic gait is "a characteristic gait resulting from pain on weightbearing in which the stance phase of gait is shortened on the affected side," i.e., a limp. *Gait, in Stedman's Medical Dictionary* (27th ed. 2000), *available at* STEDMANS 156940 (Westlaw). An ataxic gait is "wide-based gait with lateral veering, unsteadiness, and irregularity of steps; often with a tendency to fall to one or other side, forward or backward." *Id.*

Bishara's opinion and failed to explain his reasons for disagreeing with Dr. Bishara's opinion. (Pl.'s Br. 14.) Andrews also complains that Dr. Reddy reported postural and environmental limitations that the ALJ failed to consider and mention in his decision. (Pl.'s Br. 14.)

The ALJ had opinions before him from two medical sources that specifically addressed Andrews' abilities to sit, stand, and walk: one by Dr. Bishara, the consultative examiner, stating that Andrews' walking and standing was limited to one-third of an eight-hour day, and the other by Dr. Reddy, the State agency consultant, stating that Andrews could stand and walk for two-thirds of an eight-hour day and sit for two-thirds of an eight-hour day.[10] Again, because both of these doctors were nontreating sources, the ALJ was not required to give these opinions controlling weight. *See* 20 C.F.R. §§ 404.1502, 416.902. As described more fully below, the ALJ's decision at least implicitly reveals the ALJ's reasoning behind his evidentiary choices. Furthermore, the Court's review of the record confirms the existence of substantial evidence supporting the ALJ's decision. Accordingly, even assuming that the ALJ erred by not sufficiently explaining the weight that he gave to these medical opinions, any error is harmless. *See Hammond*, 124 F. App'x at 851.

Because the ALJ found that Andrews could perform light work, he implicitly accepted Dr. Reddy's opinion that Andrews could stand and walk for two-thirds of the day and rejected Dr. Bishara's opinion that she could stand and walk for only one-third of the day. In so doing, the ALJ properly exercised his duty to resolve conflicts in the evidence. *See Newton*, 209 F.3d at 457. Furthermore, the ALJ explained that "[t]he claimant has a normal gait and station. She

---

[10] Andrews complains that the ALJ failed to refer to the functional capacity evaluations of the State agency medical consultants, but the mere fact that the ALJ did not explicitly mention the State agency medical consultants' opinions does not prove that he did not consider them in formulating Andrews' RFC. *See Hammond*, 124 F. App'x at 851. The ALJ stated that he had assessed Andrews' RFC "[a]fter careful consideration of the entire record" and that he had considered the opinion evidence in accordance with the regulations and the SSA's own policy rulings. (Tr. 23.) It is clear that the ALJ was aware of the State agency medical consultants' opinions because he had specifically mentioned earlier in his decision, at step three, that he had considered them.

maintains her residence and performs her activities of daily living independently. The record contains no objective signs of an incapacitating impairment such as muscle atrophy or grossly abnormal neurological deficits." (Tr. 24.) In this way, the ALJ showed that he did consider the factors of sections 404.1527(c) and 416.927(c), especially the amount of supporting evidence underlying Dr. Bishara's opinion and its degree of consistency with the record as a whole, and provided an explanation for his implied decision to give less weight to Dr. Bishara's opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

This explanation also gives the ALJ's reasons for deciding not to include the postural limitations identified by Dr. Reddy. Although the record contained many complaints by Andrews of back pain, the ALJ observed that the record contained no objective signs of an incapacitating impairment. (Tr. 24.) With nontreating physicians' opinions, an ALJ is free to incorporate only those limitations that he finds "consistent with the weight of the evidence as a whole." *Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. May 13, 2008) (per curiam). Andrews points to no objective medical signs and laboratory findings in the record that evidence the existence of any postural limitations. Accordingly, the Court cannot say that the ALJ erred in refusing to include postural limitations that he judged to be unsupported by the objective evidence.[11] Therefore, because substantial evidence supports the ALJ's RFC mental and physical RFC determinations, remand on this issue is not required.

---

[11] Andrews also argues that Dr. Reddy reported environmental limitations that the ALJ failed to consider. (Pl.'s Br. 14.) Dr. Reddy recommended that Andrews avoid concentrated exposure to "fumes, odors, dusts, gases, poor ventilation, etc." and "hazards (machinery, heights, etc.)." (Tr. 361.) The ALJ did incorporate most of these limitations with his finding that Andrews could perform light work "in an environment that is free of fumes, odors, dusts, gases, poor ventilation, etc." (Tr. 23.) The ALJ did not limit Andrews to working in an environment that is free from "hazards," but again, Andrews fails to direct the Court to any objective medical signs and laboratory findings in the record that would support the imposition of this limitation.

**B.**   **Did the ALJ Protect the Due Process Rights of Andrews, an Unrepresented Claimant?**

In her first issue, Andrews argues that the ALJ did not protect her due process rights because he inadequately informed her of her right to counsel and, consequently, her decision to proceed pro se was invalid. (Pl.'s Br. 7.) Of course, there is no constitutional right to counsel at a social security hearing. *See Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992). However, a claimant has a statutory right to counsel at a social security hearing. 42 U.S.C. § 406; 20 C.F.R. §§ 404.1705, 416.1505; *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). The claimant may waive this right if given sufficient information to decide intelligently whether to retain counsel or proceed pro se. *Norden v. Barnhart*, 77 F. App'x 221, 223 (5th Cir. 2003) (citing *Clark v. Schweiker*, 652 F.2d 399, 403–04 (5th Cir. Unit B July 1981)). "Sufficient information" includes explanations of how an attorney can assist the claimant in the hearing, the possibility of free counsel or a contingency agreement, and the limitation on attorney's fees to twenty-five percent of past due benefits awarded. *Clark*, 652 F.2d at 403. But even if a claimant does not validly waive the right to counsel, the claimant must show that she "was prejudiced due to the absence of counsel at the hearing." *Castillo*, 325 F.3d at 552. Remand is appropriate "only when the record reveals evidentiary gaps that result in unfairness or clear prejudice." *Guerin v. Shalala*, No. 93–8530, 1994 WL 395077, at *2 (5th Cir. June 28, 1994); *see also Brock v. Chater*, 84 F.3d 726, 729 n. 1 (5th Cir. 1996). To establish prejudice, the claimant must show that counsel "could have and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728.

Before the hearing, the ALJ twice mailed a notice of hearing to Andrews that included a two-page publication from the Social Security Administration titled, "Your Right To Representation." (Tr. 75–76, 110–12.) This publication states, "You can have a representative,

such as an attorney, help you when you do business with Social Security." (Tr. 75, 110.) It lists several actions that the representative can take on the claimant's behalf, such as helping the claimant obtain medical records, accompanying the claimant to interviews and hearings, and preparing and questioning witnesses. (Tr. 75, 110.) The publication further states, "Some organizations can help you find an attorney or give you free legal services if you qualify. Some representatives do not charge unless you receive benefits. Your Social Security Office has a list of organizations that can help you find a representative." (Tr. 75, 110.) The publication also explains that the SSA will usually approve a fee agreement between a claimant and a representative as long as, *inter alia*, the agreed-upon fee "is no more than 25 percent of past-due benefits or $6,000, whichever is less." (Tr. 75–76, 110–112.) Finally, the publication states that, "[i]f an attorney or non-attorney whom Social Security has found eligible for direct payment represents you, we usually withhold 25 percent (but never more) of your past-due benefits to pay toward the fee." (Tr. 76, 112.)

Thereafter, at the beginning of the May 19, 2010 hearing, the following exchange took place between the ALJ and Andrews:

> ALJ:   Do you understand that you do have a right to an attorney or some other representative?
> CLMT [Andrews]:    Yes, I do.
> ALJ:   Is it your desire to go ahead by yourself today?
> CLMT:       Yes.

(Tr. 32.) Andrews complains that her waiver of counsel was invalid because, at the hearing, the ALJ did not orally provide her with sufficient information to decide whether to proceed pro se, did not ask whether Andrews had had an opportunity to obtain counsel, and did not offer to postpone the hearing to allow her to obtain counsel. (Pl.'s Br. 8.)

"An ALJ should provide pre-hearing written notification of a claimant's right to counsel, and also ascertain at the hearing whether the claimant had a 'meaningful opportunity to secure

counsel and, if not, consider adjourning the hearing to provide that opportunity.'" *Ivanova v. Astrue*, No. 3:09-CV-2349-K, 2010 WL 2228511, at *8 (N.D. Tex. May 20, 2010) (quoting *Freeman-Park v. Barnhart*, 435 F. Supp. 2d 597, 601 (E.D. Tex. 2006)), *adopted in* 2010 WL 2228515 (N.D. Tex. June 2, 2010). Andrews cites no law in the Fifth Circuit or in this district explicitly requiring the detailed oral notice that Andrews urges when the prehearing written notice adequately provides notification of the claimant's right to counsel.[12] Indeed, the Fifth Circuit has upheld a claimant's waiver of the right to counsel when prehearing written notices adequately provided the claimant with sufficient information regarding her right to counsel and the ALJ merely "reminded" the claimant at the hearing of the notices informing her of her right to be represented by an attorney and confirmed that she nevertheless wanted to appear without counsel. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003); *see also Shelton v. Astrue*, No. 3:07-CV-1347-P, 2008 WL 4809436, at *5 (N.D. Tex. Nov. 3, 2008) (concluding that the claimant validly waived her right to counsel, even though the ALJ did not orally notify her that she could retain an attorney through a contingency fee arrangement or that free legal services could be available, because she received this information in prehearing written notices and the ALJ discussed the issue of right to counsel at the hearing).[13]

---

[12] The Fifth Circuit has recognized that prehearing written notice may not always be adequate. *See Benson v. Schweiker*, 652 F.2d 406, 408 (5th Cir. 1981). However, the *Benson* notice was held inadequate because it did not inform the claimant of "the possibility of her having free counsel and of the limitations on the fee that counsel could charge as a part of the recovery if any was made." *Id.* That is not the case here.

[13] *Cf. Shelton v. Astrue*, No. 4:11-CV-264-Y, 2012 WL 826295, at *4 (N.D. Tex. Jan. 30, 2012) (holding that claimant did not validly waive right to counsel, despite receiving prehearing written notice, because the record of the hearing "contain[ed] no evidence that the ALJ provided any oral notification whatsoever of [the claimant's] right to counsel"), *adopted in* 2012 WL 812391 (N.D. Tex. Mar. 12, 2012); *Rayford v. Astrue*, No. 4:10-CV-0174-G, 2011 WL 3268405, at *4–6 (N.D. Tex. July 29, 2011) (finding claimant's waiver of counsel invalid, even though claimant had received written notice of right to counsel, because the ALJ made only a cursory inquiry at the hearing into why claimant was without counsel and the record did not indicate why claimant's attorney had withdrawn from the case prior to the hearing).

In addition, Plaintiff relies on *Gullett v. Chater*, 973 F. Supp. 614, 621 (E.D. Tex. 1997), in support of her position. However, the plaintiff in *Gullett* received no prehearing written notice. That is not the case here, so the *Gullet* decision is inapposite.

Similarly, here, Andrews received prehearing written notices that adequately informed her of ways in which her attorney could assist her, the possibility of free counsel or a contingency arrangement, and the limitation on attorney's fees to twenty-five percent of past due benefits. This prehearing notice contained the "sufficient information" necessary to allow Andrews to make an intelligent decision on the issue of retaining counsel. *See Norden*, 77 F. App'x at 223; *Clark*, 652 F.2d at 403. Furthermore, at the hearing, the ALJ confirmed that Andrews understood her right to have an attorney or some other representative present with her but that she still wanted to proceed pro se. Accordingly, the Court concludes that the information provided by the prehearing written notice, along with the ALJ's oral reminder at the hearing of Andrews' right to counsel, sufficiently informed Andrews of her right to an attorney. Thus, Andrews validly waived her right to counsel and decided to proceed pro se.

Furthermore, even if the Court assumed that Andrews did not validly waive her right to counsel, remand still would not be required because Andrews cannot show how the presence of an attorney would have changed the ALJ's determination. Citing to *Bowling v. Shalala*, Andrews argues that the lack of a cross-examination of the vocational expert ("VE") prejudiced her because the hypothetical questions that the ALJ posed to the VE did not incorporate the mental limitations found by Dr. White and the physical limitations found by Dr. Reddy and Dr. Bishara. 36 F.3d 431, 436 (5th Cir. 1994). However, *Bowling* states that the ALJ's hypothetical questions must "incorporate reasonably all disabilities of the claimant *recognized by the ALJ.*" *Id.* (emphasis added). The ALJ's hypothetical question to the VE asked whether a person with an RFC of light work "to be performed in a clean atmospheric environment" could perform the jobs of caregiver and customer service representative. (Tr. 38.) This hypothetical question incorporates the exact limitations that the ALJ recognized in his findings. Therefore, contrary to Andrews' argument, it complies with *Bowling*.

By complaining that the hypothetical question did not include the limitations found by Dr. White, Dr. Reddy, and Dr. Bishara, Andrews apparently is not complaining of the hypothetical question itself but rather the RFC upon which the hypothetical question is based. However, as discussed above, substantial evidence supports the ALJ's RFC finding, and Andrews does not show how the presence of counsel at the hearing would have adduced any additional evidence that might have changed the result. *See Brock*, 84 F.3d at 728. Because Andrews validly waived her right to counsel, and because she cannot show that she was prejudiced by not being represented by counsel at the hearing, remand on this ground is not required.

### C.  Did the Commissioner Properly Evaluate Andrews' Credibility?

When medical evidence shows that a claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, including pain, the ALJ then must evaluate the "intensity and persistence" of the claimant's symptoms to determine how the symptoms limit the claimant's capacity for work.   20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *see also* SSR 96-7p, 61 Fed. Reg. 34483, 34484 (July 2, 1996). The ALJ must consider all of the available evidence, including: (1) the claimant's history; (2) signs and laboratory findings; and (3) statements from the claimant, treating or nontreating sources, or other persons about how the symptoms affect the claimant.   20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).   The ALJ may consider various factors relevant to a claimant's credibility, including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the claimant receives or has received for relief of pain or other symptoms; (6) any measures used to relieve pain or other

symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* §§ 404.1529(c)(3), 416.929(c)(3). "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 61 Fed. Reg. at 34486.

In his review of the evidence, the ALJ observed that physical exams in 2007 and 2008 consistently revealed no significant abnormalities in Andrews' heart or back function. (Tr. 20.) The ALJ also noted Dr. Bishara's observations that although Andrews "complained of great pain with the lightest touch to her back, she had no significant abnormalities . . . . Specifically, examination of her back revealed no deformities, no kyphosis, no scoliosis, no trigger points, and no spasms." (Tr. 21.) Andrews had normal heel to toe walking, normal ability to get in and out of a chair without difficulty, and normal ability to get on and off the examination table without difficulty. (Tr. 21.) Although Andrews had lower extremity weakness on active testing, this was "inconsistent with other findings including her entry and exit from the office with little difficulty." (Tr. 21.) Dr. Bishara assessed Andrews' subjective complaints of low back pain to be "much worse than [the] objective findings" and found that there was "evidence of quite prominent symptom magnification." (Tr. 21.)

The ALJ also discussed Andrews' hearing testimony, noting that Andrews claimed that she was unable to work due to back pain. (Tr. 19, 37.) Andrews claimed that conservative treatment, including epidural steroid injections that she had received in early 2010, did not alleviate the pain. (Tr. 19–20, 37.) Andrews also stated, however, that she was not taking medication for back pain at the time of the hearing and that she had not taken any pain medication for approximately one month because she had recently moved to Fort Worth from Waco, and "they wasn't able to give me none from Waco." (Tr. 20, 37.) She stated that she had a "classification appointment" with the local health care system scheduled for June 4, 2010. (Tr.

35.)  In discussing Andrews' credibility, the ALJ noted that Andrews "has a normal gait and station.  She maintains her residence and performs her activities of daily living independently.  The record contains no objective signs of an incapacitating impairment such as muscle atrophy or grossly abnormal neurological deficits." (Tr. 24.)

In his decision, the ALJ stated as follows:

> I find that, despite the impairment and actual functional limitations, neither the objective medical evidence or any other non-medical evidence establishes that the claimant's ability to function is so severely impaired as to preclude the performance of all work activities.  Therefore, I will consider subjective complaints credible only to the extent that they are supported by the evidence of record as summarized within the text of this Decision.

(Tr. 24.)  Andrews argues that this statement shows that the ALJ failed to consider the relevant factors listed above. (Pl.'s Br. 17.)  The Court disagrees because, as detailed above, the ALJ's decision as a whole reveals that he considered all the evidence, including Andrews' history, medical records, medical opinions, and Andrews' own testimony, before concluding that Andrews' subjective complaints were not credible to the extent that she alleged.

Andrews also complains that the ALJ failed to consider the possibility of a mental impairment as the basis for Andrews' perception of her symptoms and pain. (Pl.'s Br. 17; Reply 4.)  In support of this argument, Andrews relies upon SSR 88-13, an out-of-date ruling superseded by SSR 95-5p, which in turn was superseded by SSR 96-7p. *See* SSR 95-5p, 60 Fed. Reg. 55406, 55406 (Oct. 31, 1995) (superseding SSR 88-13); SSR 96-7p, 61 Fed. Reg. 34483, 34484 (July 2, 1996) (superseding SSR 95-5p).  To the extent that Andrews argues that her pain symptoms are the result of a mental impairment, the Court has already determined that substantial evidence supports the ALJ's determination that Andrews' adjustment disorder with depressed mood is not severe.  At most, there is evidence of a diagnosis of a mental impairment, but Andrews directs the Court to no evidence indicating that it affected her perception of pain.

Finally, Andrews argues that the ALJ failed to evaluate the effect of her obesity upon her functional abilities or the impact of symptoms of obesity, including pain. (Pl.'s Br. 17–18.) However, the ALJ acknowledged Andrews' obesity and stated that he had considered SSR 02-01p, as well as the effect of Andrews' obesity and pain, in deciding her functional capacity. (Tr. 23.) *See* SSR 02-1p, 67 Fed. Reg. 57859 (Sept. 12, 2002) (providing guidance on the evaluation of disability claims involving obesity). Again, Andrews does not direct the Court to any evidence showing that her obesity caused any functional limitations that were not accounted for in the RFC assessment or otherwise affected her abilities beyond the level acknowledged by the ALJ. Accordingly, the Court concludes that the ALJ's review of the medical evidence and Andrews' activities of daily living, coupled with the consultative doctor's observations of "subjective complaints much worse than objective findings" and "quite prominent symptom magnification," constitutes substantial evidence supporting the ALJ's finding that Andrews' subjective complaints were not entirely credible. *See Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. Therefore, remand on this issue is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28

U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until December 24, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December **10**, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE